GERALDINE PEFF, by L. W. LAUGHLIN, her guardian and next friend, Appellee, v. DR. RUSSELL C. DOOLITTLE et al., Appellants.

No. 46518.

OCTOBER 17, 1944.

REHEARING DENIED DECEMBER 14, 1944.

444

Grant L. Hayes, County Attorney of Ringgold County, Francis J. Kuble, County Attorney of Polk County, and Stipp, Perry, Bannister, Carpenter & Ahlers, of Des Moines, for appellants.

Lewis & Lewis, Emmet R. Warin, and Frank F. Wilson, all of Mount Ayr, for appellee.

HALE, J.—The plaintiff, Geraldine Peff, was born in Des Moines, December 20, 1902. She is the daughter of ·L. W. Laughlin, whose home is in Mount Ayr. She was married to Peter Peff in New York City,˙where she had been employed as a teacher, on June 30, 1931, and afterward lived in New Jersey. To this marriage twin daughters were born about 1935. Peter Peff is of Bulgarian birth, and after his marriage, through a manufacturing business he acquired considerable wealth. Mrs. Peff in 1937 developed mental trouble and was first taken care of in a private hospital for the mentally afflicted in Overbrook, New Jersey. Thereafter she was in various hospitals for the treatment of the mentally ill: at Paterson, New Jersey; The Retreat, at Des Moines; Davenport, Iowa; Macon, Missouri; and again at The Retreat, where she was an inmate at the institution of this action. Defendant Dr. Russell C. Doolittle is the medical director of The Retreat, a hospital for the care and treatment of nervous and mental cases, located in Des Moines. Defendant Sydney L. MacMullen is the business manager of The Retreat.

Geraldine Peff was a private patient in this institution but was ˙committed .there as insane by the commission of insanity of Polk county on May 25, 1943.

The questions in this appeal are those pertaining to the habeas corpus proceedings in Ringgold county. The record submitted to us contains many immaterial matters and questions not involved in the appeal. The claim of appellants is that the

Ringgold District Court, in the proceedings and decision for the appellee, erred in four respects (1) attempting to assume jurisdiction to the exclusion of the prior jurisdiction of the Polk County District Court (2) in basing its decision upon the claimed personal knowledge of the trial judge (3) in finding Geraldine Peff to be sane and (4) in ruling that the burden of proof was upon appellants.

The first and most important of the claimed errors is that of jurisdiction. Appellants argue that the Ringgold County District Court was without jurisdiction when it attempted by habeas corpus to interfere with a case already pending on appeal in a proceeding involving the same issues before another court of concurrent jurisdiction.

In considering the question of jurisdiction involved herein it is necessary to present the proceedings in the courts of Polk and Ringgold counties.

On May 22, 1943, while she was an inmate of The Retreat, there was instituted in Polk county, in the name of Geraldine Peff as plaintiff, by L. W. Laughlin and John E. Holmes as her attorneys, a petition in habeas corpus against Russell C. Doolittle and Sydney L. MacMullen, which action was dismissed without prejudice by dismissal signed by Geraldine Peff, by L. W. Laughlin and John E. Holmes, attorneys for plaintiff, on May 26, 1943. On May 25, 1943, on information filed by Peter Peff, the commission of insanity of Polk county found Geraldine Peff to be insane and committed her to The Retreat. From such order Geraldine Peff appealed to the district court on June 3, 1943. On June 29, 1943, she filed petition in the district court for removal from The Retreat pending appeal, which application, on July 2, 1943, was denied. On the same day the commission of insanity ordered that pending appeal she be confined in The Retreat. From the above order of the Polk County District Court denying her release Geraldine Peff filed, in the office of the clerk of the district court of Polk county a notice of appeal to the supreme court.

While these proceedings were being had in Polk county, and pending appeal from the order of the commission of insanity to the district court of Polk county, there were proceedings in guardianship instituted in Ringgold county by L. W. Laughlin,

, attorney for and father of Geraldine Peff. On May 31, 1943, said Laughlin filed petition praying for his appointment as guardian of the person and property of Geraldine Peff, and on June 5, 1943, the Honorable Homer A. Fuller, as judge of the district court of Ringgold county, appointed L. W. Laughlin as temporary guardian. L. W. Laughlin, on June 8, 1943, filed application for authority to bring legal action against The Retreat for the unlawful detention of Geraldine Peff, for the alleged unlawful finding of the Polk county commission, and for habeas corpus. Order granting authority was entered June 8, 1943.

There was further, on July 19, 1943, a petition for injunction against Peter Peff, filed in Ringgold county by the guardian, and on the same day temporary injunction issued. We are not concerned with such injunction proceedings so far as this appeal is concerned.

This was the situation and the record in Polk county and in Ringgold county when these proceedings in habeas corpus were commenced in Ringgold county. On August 30, 1943, the petition for writ of habeas corpus was filed. As this petition fills twenty-five pages of the record, exclusive of exhibits, it is obviously impracticable and unnecessary to set out all the various allegations therein contained. The petition was that day presented to Judge Fuller, one of the judges of the third judicial district, and the application was allowed and the writ issued returnable September 1, 1943. Defendants appeared on that date and orally entered special appearance, which was overruled, and afterward incorporated the objection to jurisdiction in their answer, and trial was begun on September 7th.

As stated, the order of the Polk County Commission of Insanity was made on May 25th, and the appeal to the Polk County District Court was on June 3, 1943, within the ten days' time authorized by section 3560, Code of 1939, so that the matter of appellee's sanity was pending in that court when the writ of habeas corpus issued out of the Ringgold county court.

The general rule as to actions under such circumstances is cited by appellants, and is as follows:

"Pursuant to a general rule of wide application, on which there is no conflict of authorities, it has been held that a court

is without jurisdiction where it attempts by habeas corpus to interfere with the exercise by another court of jurisdiction theretofore acquired, whether such jurisdiction is acquired in another habeas corpus proceeding or on appeal, or otherwise, unless the prior jurisdiction has been terminated. More limited judicial statements are that a court should not, and will not, so interfere by habeas corpus, and that, while the pendency of a proceeding, affecting the matter in controversy, in another court which has taken prior jurisdiction does not deprive the court under all circumstances of the power to issue a writ of habeas corpus, the court should, as a matter of comity, refrain, by postponing a hearing on the writ or at least by withholding a decision, from proceeding on the writ until the conclusion of the action, suit, or proceeding which was first begun.'' 39 C. J. S. 596, section 53.

The general rule is also stated in similar terms:

''It is a settled rule that wherever a court has acquired jurisdiction of a case, no other court may, upon habeas corpus, interfere with its action as to matters concerning which it has acquired jurisdiction. Any other rule would produce a conflict of jurisdiction over the right to the custody of the person of the prisoner and lead to inextricable confusion, resulting in a defeat of the due administration of the law. For example, if an appellate court has acquired jurisdiction by virtue of an appeal from a judgment of conviction, no other court may discharge the defendant during the pendency of the appeal; that is to say, a court has no power to grant a writ of habeas corpus pending an appeal to another court from a conviction in a criminal prosecution. Nor may the fact that judges of inferior courts have concurrent jurisdiction with the highest appellate court in habeas corpus proceedings authorize a judge of an inferior court to entertain habeas corpus proceedings for the release of a prisoner whose conviction has been affirmed by the appellate court, or to overrule or review the decision of the latter court on a question of either law or fact.'' 25 Am. Jur. 223, section 108.

It is obvious that any other rule would tend to confusion and make many judgments uncertain and ineffective. The rule

announced in the two authorities quoted is of universal application, and, as stated in the quotation from Corpus Juris Secundum, there is no conflict of authorities, and appellee in argument cites none. As valuable and important a right as is the writ of habeas corpus, and as essential as it is in guarding and preserving human liberty, yet, like any other order or judgment of a court, it can be granted only by a court having jurisdiction. Nor can the exercise of this power to grant the writ be used to unsettle valid legal proceedings or to interfere with the exercise of the jurisdiction of other courts.

The texts quoted cite many authorities, as do appellants. We need not refer to all authorities cited, but only to some, more as illustrative of the effects of encroachment by one court upon the jurisdiction of another than as authority for the rule stated, which is universal. In the case of State ex rel. Bressman v. Theisen, Mo., 142 S. W. 1088, 1090, the court states:

"Where one court has competent jurisdiction of the person and is proceeding to exercise it, it would be a great outrage upon the administration of justice if a court of equal or inferior jurisdiction should by virtue of the writ of habeas corpus seek to override the jurisdiction of the former by discharging the person and thus annulling its writs and processes and rendering abortive any judgment it might lawfully render."

The language in In re Johnson, 167 U. S. 120, 125, 17 S. Ct. 735, 42 L. Ed. 103, is pertinent:

"We know of no reason why the rule, so frequently applied in cases of conflicting jurisdiction between Federal and state courts, should not determine this question. Ever since the case of Ableman v. Booth, 21 How. 506, it has been the settled doctrine of this court that a court having possession of a person or property cannot be deprived of the right to deal with such person or property until its jurisdiction is exhausted, and that no other court has the right to interfere with such custody or possession. This rule was reaffirmed in Tarble's case, 13 Wall. 397; in Robb v. Connolly, 111 U. S. 624; and In re Spangler, 11 Michigan 298, and with reference to personal property has been so often restated as to have become one of the maxims of

the law. Taylor v. Carryl, 20 How. 583; Freeman v. Howe, 24 How. 450; Ellis v. Davis, 109 U. S. 485; Krippendorf v. Hyde, 110 U. S. 276; Covell v. Heyman, 111 U. S. 176; Byers v. McAuley, 149 U. S. 608; Moran v. Sturges, 154 U. S. 256; In re Chetwood, 165 U. S. 443.''

See, also, France v. Superior Court, 201 Cal. 122, 255 P. 815, 52 A. L. R. 869; People ex rel. Kerner v. Circuit Court, 369 Ill. 438, 17 N. E. 2d 46; Commonwealth ex rel. Lawton v. Gordon, 197 Ky. 367, 247 S. W. 45; Goodman v. Daly, 201 Ind. 332, 165 N. E. 906; State ex rel. Attorney General v. Gunter, 11 Ala. App. 399, 66 So. 844 (certiorari denied 193 Ala. 676, 69 So. 445).

The reason for this general rule is clearly stated in Matter of Laurent (New York Supreme Court), reported in 11 Abb. N. Cas. 120, 121:

''It seems to me that it would be a strange and anomalous exercise of power by the court, upon habeas corpus, to interfere with the proceeding, pending the trial of the issue of sanity, pursuant to regular legal processes for that purpose. It is no part of the office of the writ of habeas corpus to change the course of legal procedure, or to provide another or different mode of trial of a question than that provided by law.''

And this court has repeatedly announced a similar doctrine, as in First Methodist Church v. Hull, 225 Iowa 306, 313, 280 N. W. 531, 534, where, as between a court of equity and a court of probate, it is said:

''It is the general rule of law that where a court of competent jurisdiction acquires jurisdiction of the subject matter of a case, its authority continues and no court of coordinate authority is at liberty to interfere with its action.'' (Citing cases.)

We have applied this general rule in various instances in habeas corpus proceedings, as in Ex parte Grace, 12 Iowa 208, 213, 79 Am. Dec. 529; and Ex parte Holman, 28 Iowa 88, 4 Am. Rep. 159, which involved a conflict of authority between federal and state courts, and recognized the rule that when a court has jurisdiction of a cause and is proceeding to arrest a party for contempt, no other court can intermeddle with or stay

the proceedings, or on habeas corpus release the party who is being proceeded against; and further, the court holds that a habeas corpus proceeding cannot be converted into a writ of error for the purpose of inquiring into the validity or regularity of a judgment or order of a court having jurisdiction. In Robb v. McDonald, 29 Iowa 330, 334, 4 Am. Rep. 211, 6 Am. L. Rev. 320, it is held that there can be no review, in a proceeding for contempt, in any other tribunal in the absence of statute, and certainly cannot be otherwise, or in other case be attacked under this writ, unless void. See, also, Zelle v. McHenry, 51 Iowa 572, 2 N. W. 264, holding that the court can inquire only into jurisdictional defects. See, also, Turney v. Barr, 75 Iowa 758, 38 N. W. 550. State v. Orton, 67 Iowa 554, 555, 25 N. W. 775, holds that habeas corpus cannot be invoked for the purpose of obtaining relief for mere errors and irregularities of the court:

"The question whether a crime was committed by the defendant cannot be determined on habeas corpus, and it cannot be seriously claimed that an erroneous taxation of costs can be." (Citing cases.)

In Van Scoy v. Gretten, 177 Iowa 431, 158 N. W. 510, an application in habeas corpus was denied, the court stating that an application in habeas corpus is collateral and cannot be sustained unless the judgment is void, and that, if the judge who makes an order has jurisdiction of the parties and of the subject matter, such order is at most voidable and not void and cannot be set aside in a habeas corpus proceeding.

In the recent case of Convey v. Haynes, 230 Iowa 485, 298 N. W. 647, 134 A. L. R. 966, citing and following McCormick v. Hollowell, 215 Iowa 638, 246 N. W. 612, it is held that it is well settled by the great weight of authority that if the court has jurisdiction of the person and the subject matter the judgment entered may not be assailed in a habeas corpus proceeding; that a finding of reversible error would avail nothing to the petitioner, and if he desires to have the judgment reversed he must do so by writ of error; that the writ will be sustained only upon a showing that the judgment entered was absolutely void as being beyond the jurisdiction of the court, and that nothing short of this will sustain the writ. See cases cited therein. If this is

the rule where no appeal has been taken; much more does it apply in a case where the appeal has been taken and the case is actually pending and not determined.

Thus, unless void, proceedings of a court of concurrent jurisdiction cannot be inquired into by habeas corpus in another court. The remedy can only be by appeal.

Appellee cites Ex parte Tom Tong, 108 U. S. 556, 2 S. Ct. 871, 27 L. Ed. 826, to the effect that a habeas corpus proceeding is a suit to enforce a civil right and is independent of the legal proceedings under which detention is sought to be justified. This may be true, but the case has little application here. Nor has State ex rel. Hellige v. Milwaukee Liedertafel, 166 Wis. 277, 164 N. W. 1004. It may be an independent action, but the issues involved in this case are the same as in the inquest of insanity before the commission in Polk county, with the subsequent appeal to the Polk County District Court. Section 3577, Code of 1939, provides:

"Habeas corpus. All persons confined as insane shall be entitled to the benefit of the writ of habeas corpus, and the question of insanity shall be decided at the hearing. If the judge shall decide that the person is insane, such decision shall be no bar to the issuing of the writ a second time, whenever it shall be alleged that such person has been restored to reason."

Thus the basis for the issuance of the writ, and the question to be presented to the court in Ringgold county, under the statute, was the very question and issue then pending on appeal in Polk county. The statute quoted above provides not only that the question of insanity may be but should be determined in the habeas corpus proceeding. But this right to the benefit of the writ of habeas corpus given by the statute does not give the right to usurp the jurisdiction of another court where the same question is pending. After the proceeding in the first court is determined, it provides a proceeding to question the detention of a person at any time.

Appellee in argument, in support of the ruling of the trial court, quotes section 12471, Code of 1939:

"Application—to whom made. Application for the writ must be made to the court or judge most convenient in point of

distance to the applicant, and the more remote court or judge, if applied to therefor, may refuse the same unless a sufficient reason be stated in the petition for not making the application to the more convenient court or a judge thereof.''

Appellee cites as in point the case of Addis v. Applegate, 171 Iowa 150, 154 N. W. 168, Ann. Cas. 1917E, 332. This case involved only the question of the venue of the action—whether it should be brought in the district court of Clayton county or in the district court of Henry county, where the plaintiff was confined in the state hospital. But no question of conflict of jurisdiction was involved. The court in the Addis case construed and applied the words ''most convenient in point of distance.'' Appellants are not complaining of any violation of the statute relating to venue in actions of habeas corpus. They do assert that pending the appeal to the district court of Polk county no other district court in Iowa had jurisdiction or authority to determine the issues of the case then pending. It is a question of jurisdiction, not venue.

It will be noted that the petition for the writ was not filed in Ringgold county until August 30, 1943. But the hearing before the commission was held on May 25, 1943, and from its order the appellee herein appealed in due time, June 3, 1943, to the district court of Polk county. Thus, prior to the time of the issuance of the writ, the Polk county court had acquired jurisdiction of the proceedings and, as shown, was entitled to exclusive exercise of that jurisdiction and to the control of the litigation until the issues were determined. Gregory v. Howell, 118 Iowa 26, 91 N. W. 778; First Methodist Church v. Hull, supra, 225 Iowa 306, 280 N. W. 531.

The commission of insanity, under the statute had jurisdiction of the subject matter and jurisdiction of the person of Geraldine Peff, she having been found within the county. Section 3544, Code of Iowa, 1939. The jurisdiction of the commission is specifically provided for in section 3540, Code of 1939. Thus the appeal is to the district court by appellee herself, from a commission having original jurisdiction both of the subject matter and the person; and the jurisdiction of the district court of Polk county on appeal, under Code section 3560, also attaches

and continues until exhausted. Busse v. Barr, 132 Iowa 463, 468, 109 N. W. 920; Lockard v. Clark, 166 Iowa 556, 147 N. W. 900.

But it is claimed by appellee that the proceeding before the commission was void on account of a claimed alteration of the record, as well as on account of other irregularities. The irregularities cited are that the information of insanity was not dated, but the date was later supplied; was not filed, but was left on the desk of the clerk of the district court of Polk county; that the commission did not find the legal settlement and could only have found Geraldine Peff a nonresident; that she could not be committed to The Retreat, but only to a state hospital; that the order of commitment was originally to the Clarinda State Hospital and was changed without authority; and lack of notice.

The questions of fact were all denied by appellants, and they were set out in appellee's notice of appeal to the district court of Polk county and were entitled to be examined and determined by that court, where the appeal was pending. If all true, they do not affect the right of the proper court to determine them. They may be errors, but are not such as to render the action of the commission void. The order of the commission, if erroneous, may be reversed on appeal. See Zelle v. McHenry, supra, 51 Iowa 572, 2 N. W. 264, where it is stated that under a writ of habeas corpus the court can inquire only into jurisdictional defects and not into the correction of an order refusing a trial by jury or overruling a motion for a change of venue. See, also, Busse v. Barr, supra, 132 Iowa 463, 109 N. W. 920; Lockard v. Clark, supra, 166 Iowa 556, 147 N. W. 900.

Appellee argues that the finding of sanity by the district court of Ringgold county is conclusive, citing In re Bresee, 82 Iowa 573, 48 N. W. 991. In that case the right to determine the question of whether the petitioner was a fit subject for treatment in an asylum for the insane was not in dispute or in issue. On hearing the writ was denied. Applicant further asserted a right to appeal to the district court, and to a jury trial, both of which were refused. The court held that all questions on the appeal had been fully heard and determined. But it will be noted that all these proceedings were in one court, and there

was no invasion of the jurisdiction of one court by another of concurrent jurisdiction.

Appellee has filed a motion herein calling our attention to various matters. The motion has no bearing upon the matters involved in this appeal and the motion is overruled.

Other questions are raised by the appellants: the action of the judge in going outside of the record and in basing his decision upon his claimed personal knowledge; the weight accorded to the testimony of certain witnesses; and the holding of the court that the burden of proof was upon the appellants. But we are convinced that the one question of jurisdiction controls the case and the other alleged errors need not be considered. The case may and should be determined on the appellee's appeal from the commission of insanity to the district court of Polk county. A full determination is provided on such appeal.

"The inquest of lunacy by a board of commissioners, is in no sense a criminal proceeding. The restraint of an insane person is not designed as punishment for any act done. The insane are, by the law, taken into the care and custody of the State, for treatment for their unfortunate infirmity. * * * the safeguards and limitations provided by our laws for the correction of any abuse which may arise from the acts of the commissioners, are ample for the protection of the citizen." County of Black Hawk v. Springer, 58 Iowa 417, 418, 10 N. W. 791.

The law provides ample security for the rights of an insane person, or a person claimed to be insane, and, applied as the law provides, the writ of habeas corpus is proper, but it cannot be used to oust another court having jurisdiction from performing its functions as by law provided and required.

We have refrained from inquiring into many matters appearing in the record and arguments, including charges and accusations having no bearing upon the controversy as to jurisdiction. The principal and only question at issue which we need consider is that of jurisdiction.

The question here is serious, involving, as it does, the right of a court of concurrent jurisdiction, while an action is pending in another court, to assume jurisdiction of the questions to be

determined in that other court, and, before trial therein, to determine the issues. If this judgment should be allowed to stand it would be a menace to our courts, and such proceedings are not to be countenanced or upheld.

The judgment and order of the trial court should be, and is, reversed, the writ annulled, and the appellee's petition dismissed.—Reversed.

All JUSTICES concur.